## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| QUEEN M. ALLEN and | : | CIVIL ACTION NO. |
| WALTRINA R. WHITMAN, | : | 3:12-cv-482 (JCH) |
|     Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| VERIZON WIRELESS, et al., | : | JUNE 6, 2013 |
|     Defendants. | : | |

**RULING RE:  MLS GROUP OF COMPANIES' MOTION TO DISMISS (Doc. No. 91), PROFESSIONAL DISABILITY ASSOCIATES' MOTION TO DISMISS (Doc. No. 92), VERIZON WIRELESS'S MOTION TO DISMISS (Doc. No. 93), METLIFE'S MOTION TO DISMISS (Doc. No. 98), METLIFE'S MOTIONS TO STRIKE (Doc. Nos. 125, 129), and PLAINTIFFS' MOTION FOR LEAVE TO FILE SUR-REPLY (Doc. No. 128).**

## I.    INTRODUCTION

Plaintiffs Queen M. Allen ("Allen") and Waltrina R. Whitman ("Whitman") bring this suit against defendants Verizon Wireless ("Verizon"), Metropolitan Life Insurance Company s/h/a MetLife ("MetLife"), MLS Group of Companies ("MLS"), and Professional Disability Associates ("PDA"), alleging 27 state and federal claims related to Allen's requests for leave pursuant to the Family Medical Leave Act ("FMLA") and for short-term disability ("STD") as well as the release of Whitman's confidential medical information in the process of administering those requests.  Before the court are Verizons', Metlife's, MLS's, and PDA's Motions to Dismiss the plaintiffs' Fifth Amended Complaint.

## II.    STANDARD OF REVIEW

Upon a motion to dismiss pursuant to Rule 12(b)(6), the court must determine whether a plaintiff has stated a legally-cognizable claim by making allegations that, if true, would shows he is entitled to relief.  See Bell Atlantic Corp. v. Twombly, 550 U.S.

544, 557 (2007) (interpreting Rule 12(b)(6), in accordance with Rule 8(a)(2), to require allegations with "enough heft to 'sho[w] that the pleader is entitled to relief'").  The court takes the factual allegations of the complaint to be true, Hemi Group, LLC v. City of New York, 130 S. Ct. 983, 986-87 (2010), and from those allegations, draws all reasonable inferences in the plaintiff's favor, Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009).

To survive a motion pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S. Ct. at 1949 (2009) (quoting Twombly, 550 U.S. at 556).

The plausibility standard does not impose an across-the-board, heightened fact pleading standard.  Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008).  The plausibility standard does not "require[] a complaint to include specific evidence [or] factual allegations in addition to those required by Rule 8."  Arista Records, LLC v. Doe 3, 604 F.3d 110, 119 (2d Cir. 2010); see Erickson v. Pardus, 551 U.S. 89, 94 (2007) (holding that dismissal was inconsistent with the "liberal pleading standards set forth by Rule 8(a)(2)").  However, the plausibility standard does impose some burden to make factual allegations supporting a claim for relief.  As the Iqbal court explained, it "does not require detailed factual allegations, but it demands more than an unadorned, the-

defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Iqbal, 129 S. Ct. at 1949 (citations and internal quotations omitted). Under the Second Circuit's gloss, the plausibility standard is "flexible," obliging the plaintiff "to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Boykin, 521 F.3d at 213 (citation omitted); accord Arista Records, 604 F.3d at 120.  Further, the court must construe pro se pleadings "broadly, and interpret them to raise the strongest arguments that they suggest." Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir.2000).

## III.    FACTUAL BACKGROUND

Allen was employed by Cellco Partnership d/b/a Verizon from November 8, 2004 to January 14, 2011, first as a customer service representative and later as a business support coordinator.  Fifth Am. Compl. (Doc. No. 88) ¶ 7.  From 2004 through 2007, Allen received a "performing" evaluation, which means she consistently attained and may have periodically exceeded job requirements.  Id.  In 2008, Allen received a "leading" evaluation, which means she consistently exceeded job requirements above and beyond expectations.  Id.  In July 2009, she received a "performing" evaluation.  Id. at ¶ 11.

Metlife administers Verizon's claims for leave pursuant to the FMLA as well as for STD.  Id. at ¶ 127.  Verizon and Metlife have entered into a service agreement for this purpose.  Id. at ¶ 334.  Diane Anderson, a Verizon employee, coordinates requests for leave with Metlife.  Id. at ¶ 186.

Allen requested leave for January 29, 2009, through February 13, 2009.  Id. at ¶ 9.  When Allen returned to work, she completed a "return to work" form, which represented that she suffered from a serious illness.  Id. at ¶ 155.  In August 2009, Allen was taken off a telephone call and brought into a meeting with Verizon's Management Team.  Id. at ¶ 158.  The Management Team discussed her net promoter score performance, which is a score rated by the consumer, and they discussed how Allen needed to improve her performance.  Id.  Allen was emotional after the meeting and felt undermined.  Id.

Allen experienced high anxiety and depression in response to the meeting.  Id. at ¶ 163.  She sought psychiatric care and took time off from work, from September 2009 through November 2009.  Id. at ¶ 163.  She was originally denied FMLA and STD benefits for this period.  Id. at. ¶ 222, Ex. 7.  However, on appeal, Metlife reinstated her short-term benefits for that period.  Id. at Ex. 8.  In October 2009, Allen sought an accommodation for her anxiety and depression and requested a position that did not require her to be on the telephone.  Id. at ¶ 165.  Verizon informed Allen that there were no offline positions available and did not offer other options.  Id.

Allen requested leave from February 6, 2010, through February 21, 2010, this time to care for her mother, Whitman.  Id. at ¶ 23.  As part of her request for leave— claim number ending in 5978—Allen provided Whitman's confidential medical information in the form of a certification ("FMLA certification").  Id. at ¶¶ 23, 41.

Allen submitted another claim—claim number ending in 8494—for FMLA leave and STD for March 8, 2010, through June 24, 2010.  Id. at ¶ 24.  Allen suffered from allergies and fatigue, she recently had her wisdom tooth pulled, and she was

undergoing pulmonary and sleep testing.  Id. at Ex. 15.  Laura Cosme, an employee at Metlife, gained unauthorized access to Whitman's FMLA certification on March 26, 2010, while processing claim 8494.  Id. at ¶ 41, Ex. 15.  Shelly Bennett of Metlife denied Allen's 8494 claim for STD by letter on April 1, 2010.  Id. at ¶ 43.  In that letter, Bennett acknowledged that Metlife contacted Linda M. Spiegel, APRN ("Speigel"), who was Whitman's, not Allen's, health care provider.  Id. at ¶¶ 3, 43.  The information regarding Spiegel's care of Whitman was provided in the FMLA certification.  Id. at ¶ 43.

Allen's request under the FMLA was denied on April 5, 2010.  Id. at Ex. 17.  The denial of Allen's claim for STD was overturned months later.  Id. at ¶ 92, Ex. 12.  On July 14, 2010, Verizon sent Allen a memorandum on how to manage her time off as well as a "final written warning."  Id. at ¶ 169.  When an employee receives a "final written warning," she is unable to apply for jobs within Verizon.  Id.

Allen later requested leave—unrelated to her request to care for her mother— from November 15, 2010, through January 14, 2011.  Id. at ¶ 28.  This claim ended in the number 8804.  Id. at ¶ 44.  Allen requested leave because she had a chronic serious health condition involving depression, anxiety, and severe pain in her mouth.  Id. at ¶¶ 70, 82, 187.  On November 23, 2010, Metlife emailed Allen to inform her that she needed to complete a medical authorization form so her physician could release medical information necessary for evaluating her claim.  Id. at ¶ 178.  Allen gave her physician the required forms.  Id. at ¶ 188.

Metlife provided MLS and PDA's Independent Medical Peer Reviewer access to Allen and Whitman's private information.  Id. at ¶¶ 141, 405.  MLS used information from Whitman's FMLA certification in its peer review of Allen's STD claim.  Id. at ¶ 378.

PDA's Independent Medical Peer Reviewer created a report regarding the basis for Allen's claim.  Id. at ¶ 149.  In that report, PDA represented Whitman's medical history as though it were Allen's history.  Id. at ¶ 185.

Metlife denied Allen's 8804 STD claim, stating that, "[t]he information available noted you received treatment, however, lacked the objective evidence sufficient to document a condition or symptoms that were of a level of severity that would be consistent with functional impairment and inability to perform your job."  Id. at ¶ 81. Allen alleges that Metlife used Whitman's certification to deny her claim.  Id. at ¶ 150. On January 4, 2011, Allen attempted to appeal her claim for STD and FMLA benefits. Id. at ¶  181.  Metlife acknowledged Allen's appeal request on January 14, 2011, and provided the administrative file to Allen in June 2011.  Id. at ¶¶ 183-84.

While Allen was absent from work, Allen emailed her supervisor, Debra Bushman ("Bushman"), daily regarding her health.  Id. at ¶¶ 189, 196.   Bushman informed Allen that, as of January 1, 2011, she could no longer communicate her absences to Bushman via email.  Id. at ¶ 189.  She had to call the Call Center instead.  Id.  Due to her health condition, Allen had a difficult time calling Bushman.  Id.  Bushman was aware that Allen was ill and could not advocate for herself.  Id. at ¶ 196.  In addition, Anderson, as the coordinator for unplanned leaves, usually sent Allen emails regarding her absences.  Id. at ¶¶ 179, 186, 247.  However, Allen did not receive any emails from Anderson from November 15, 2010, through January 14, 2011.  Id. at ¶ 179.

On January 14, 2011, Verizon terminated Allen, alleging job abandonment.  Id. Further, at some point during her employment with Verizon, Allen was informed that she would receive two "Recognizing You" certificates—awarded for stellar performance—

6

valued at $75 in total.  Id. at ¶ 230.   Augeo Incent emailed Allen on September 16,

2011, promising her the certificates.  Id. at ¶ 231.  Allen never received the certificates.

Id.

## IV.   DISCUSSION

### A.  Intentional infliction of emotional distress claims

Allen and Whitman claim intentional infliction of emotional distress against

Verizon and Metlife in Count Three, PDA in Counts 21 and 25, and MLS in Count 27.

To raise a claim for intentional infliction of emotional distress, under Connecticut law,

Allen and Whitman must allege: "(1) that the actor intended to inflict emotional distress;

or that he knew or should have known that emotional distress was a likely result of his

conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's

conduct was the cause of the plaintiff's distress; and (4) that the emotional distress

sustained by the plaintiff was severe."  Peytan v. Ellis, 200 Conn. 243, 253 (1986).

Whether a defendant's conduct is extreme and outrageous is initially a question for the

court to determine.  Perez-Dickson v. City of Bridgeport, 304 Conn. 483, 527 (2012).

Courts have found liability for IIED claims only where the conduct has been "so

outrageous in character, and so extreme in degree, as to go beyond all possible bounds

of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

community."  Id.  Conduct that is merely insulting, displays bad manners, or results in

hurt feelings is insufficient to support a claim of IIED.  Id.

Allen and Whitman allege that the defendants intentionally engaged in

outrageous and extreme behavior when they used Whitman's confidential information,

without Allen's or Whitman's consent, to tarnish Allen's reputation and deny her STD

benefits.  Fifth Am. Compl. ¶¶ 91, 392, 415.  According to Allen and Whitman, the defendants' use of the confidential information was "intentional and malicious insofar that their actions were taken with knowledge that plaintiffs' emotional and physical distress would increase as a result of their conduct."  Fifth Am. Compl. ¶¶ 96, 398, 421. Further, as to MLS and PDA, the use of the confidential information was "extreme and outrageous" because they each had an agreement with Metlife to provide an accurate peer review and were considered experts in the FMLA.  Fifth Am. Compl. ¶¶ 396, 419.

     1.   Metlife and Verizon

Both Metlife and Verizon argue that Allen's claims for intentional infliction of emotional distress must fail because they are preempted by ERISA.  "ERISA is an intricate, comprehensive statute. Its federal regulatory scheme governs employee benefit plans, which include both pension and welfare plans."  Boggs v. Boggs, 520 U.S. 833, 841 (1997).  ERISA's provisions "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."  29 U.S.C. § 1144(a). Thus, ERISA preempts state law whenever state law comes into conflict with one of ERISA's provisions.  See Boggs, 520 U.S. at 841 (holding that ERISA preempted a state law permitting the testamentary transfer of a nonparticipant spouse's community property interest in undistributed pension plan benefits).

"The determination of whether a state law is preempted by ERISA requires two prongs of analysis."  Case v. Hospital of St. Raphael, 38 F.Supp.2d 207, 208 (D. Conn. 1999).  First, a state law claim is preempted when it "refers to ERISA plans in the sense that it acts solely upon such plans or depends upon the existence of an ERISA plan as an essential part of its operation."  Id.  Second, even if the state law does not refer to

ERISA, it is preempted if it "has a clear connection with a plan by mandating employee benefit structures and administration or by providing alternative enforcement mechanisms." Id. In Case, the court held that state contract, emotional distress, and CUTPA claims were preempted because the liability of the parties was dependent on the existence of the ERISA plan and the rights conferred by it. Id. at 209.

Allen's claims for intentional infliction of emotional distress are preempted because the actions taken by Verizon and Metlife that form the basis of her claims took place in the processing of her STD benefits request. See Rovira v. AT&T, 760 F.Supp. 376, 379 (S.D.N.Y. 1991) (recognizing that when a beneficiary claims relief for injuries which arise out of the administration of an ERISA benefit plan, the state claims "relate to" the plans and are preempted). The case most on point is Darcangelo v. Verizon Communic., 292 F.3d 181 (4th Cir. 2002). In Darcangelo, the plaintiff alleged that Verizon's agent, CORE, solicited her private medical information. Id. at 188. The court stated that, "[i]f CORE obtained Darcalengelo's medical information in the course of processing a benefits claim or in the course of performing any of its administrative duties under the plan, these claims would be 'related to' the ERISA plan under [section] 514 and would therefore be preempted." Id. The court distinguished the allegations in Darcangelo's complaint because she alleged that CORE solicited her private medical information for the sole purpose of trying to terminate her. Id. Under that factual scenario, CORE did not obtain the information in the processing of a benefits claim, which is why the state law claim for intentional infliction of emotional distress was not preempted. Id. Because, here, Allen alleges that Metlife intentionally obtained her information—and Verizon intentionally used that information—in the processing of her

request for STD benefits, her claims for intentional infliction of emotional distress are dismissed.

As for Whitman's claims,[1] her allegations of intentional conduct by Verizon are merely "threadbare recitals of elements of a cause of action."  Iqbal, 556 U.S. at 678-79. She fails to plead any facts that allow the court to draw the reasonable inference that Verizon intentionally used (or intentionally allowed Metlife to use) Whitman's confidential information in Allen's FMLA and STD review.  However, Whitman's allegations as to Metlife, while not a model of clarity, at this stage of litigation and as pled by a pro se plaintiff, are sufficient to withstand Metlife's Motion to Dismiss.  Whitman alleges that "Cosme of Metlife gained unauthorized access" to her FMLA certification and contacted her physician on March 26, 2010, even though Allen spoke to Cosme on March 25, 2010, "and provided Cosme . . . [with the] full details of her Health Care Provider information."  Fifth Am. Compl. ¶¶ 12, 308.  These allegations are enough to state a claim for relief.  Therefore, Count Three is dismissed as to Verizon and as to Allen's claim against Metlife.  Metlife's Motion to Dismiss Count Three as to Whitman is denied.

2.  MLS and PDA[2]

Allen and Whitman allege that MLS and PDA committed the tort of intentional infliction of emotional distress in conclusory terms.  They claim that PDA and MLS

---

[1] Verizon and Metlife appear to argue that Whitman's claims are also preempted under ERISA. However, case law suggests that state laws are not preempted if they do not "implicate the relations along the ERISA plan entities, the principals, the employer, the plan, the plan fiduciaries and the plan beneficiaries."  Lyons v. Fairfax Properties, Inc., 2002 WL 31060373, at * 4 (D. Conn. May 30, 2002).  As Whitman's claims do not involve such relationships—she is a third party unrelated to the administration of STD benefits—her claims do not implicate such relationships and are not preempted.

[2] Neither MLS or PDA argue that the claims alleged against them are preempted by ERISA. There is case-law that states claims against third parties who provide professional services to ERISA plans are not preempted.  See Lyons, 2002 WL 31060373, at *4 (collecting cases).  Because MLS and PDA did not argue ERISA preemption, the court will not consider whether such case-law applies to peer reviewers.

"intended to inflict emotional distress and knew or should have known that emotional distress was the likely result " when they (1) failed to acknowledge that there wasn't a consent form signed by Whitman or Allen to use Whitman's medical information and (2) used Whitman's confidential medical information to tarnish and deny Allen of short term disability.  Fifth Am. Compl. ¶¶ 388, 390-92, 41, 413-15.  They allege that using Whitman's confidential medical information in the processing of Allen's claim for STD benefits was extreme and outrageous because PDA and MLS each had an agreement with Metlife to perform an accurate peer review.  Fifth Am. Compl. ¶¶ 396, 419.

These allegations do not include factual assertions sufficient 'to raise a right to relief above the speculative level.'" Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir.2008) (quoting Twombly, 550 U.S. at 555).  Therefore, Allen and Whitman's claims, set forth in Counts 21, 25, and 27, are dismissed without prejudice to replead.

### B.  Negligent misrepresentation

Whitman alleges a claim of negligent misrepresentation against Metlife in Count Four.  To state a claim for negligent misrepresentation under Connecticut law, Whitman must allege: "(1) a false representation was made to the party as a statement of fact, (2) it was made for the guidance of the party, (3) the party making the representation failed to exercise reasonable care in obtaining or communicating the information, and (4) the pleading party justifiably relied on the representation to its detriment." MacNeal v. Alden Design, Inc., 2007 WL 3318259, at *2 (Conn. Super. Nov. 1, 2007).

According to Whitman, Metlife made a misrepresentation of fact by suggesting in its April 1, 2010 letter that Allen provided Whitman's FMLA Certification rather than acknowledging that it obtained Whitman's FMLA certification without authorization.  Fifth

Am. Compl. ¶¶ 102-104.  Metlife argues that Whitman fails to state a claim for negligent

misrepresentation as a matter of law because the alleged statement by Metlife was

made to <u>Allen</u> in its April 1, 2010, letter, not <u>Whitman</u> (who is the plaintiff bringing this

claim).  Metlife's Mem. in Supp. Mot. to Dismiss at 11 (Doc. No. 98).  Metlife further

argues that, "Whitman does not allege any specific fact that Metlife purportedly

misrepresented," only that Metlife did not acknowledge how it obtained Whitman's

FMLA certification.  <u>Id.</u> at 12.

     The court concludes that Whitman fails to state a claim for negligent

misrepresentation.  There are no allegations in the Fifth Amended Complaint to allow

this court to make the reasonable inference that Metlife made any statement <u>to</u>

Whitman <u>for her</u> guidance or that Whitman justifiably relied on Metlife's statements to

<u>her</u> detriment.  <u>See</u> <u>Meade v. Yale University</u>, 2006 WL 2730320, at *5 (Conn. Super.

Sept. 7, 2009) (describing facts that sufficiently establish the reliance element of a

cause of action for negligent misrepresentation).  All Whitman alleges is that, "she relied

on Metlife's misrepresentation until she reviewed" the FMLA, the Genetic Information

Nondiscrimination Act (GINA), and Metlife's Customer Privacy Policy and Administrative

Records.  Fifth Am. Compl. ¶ 104.  This is insufficient to state a claim and, therefore,

Count Four is dismissed.

     C.  <u>Invasion of privacy</u>

     Allen and Whitman allege invasion of privacy against all four defendants in Count

Five.  "[T]he law of privacy has not developed as a single tort, but as a complex of four

distinct kinds of invasion of four different interests of the plaintiff, which are tied together

by the common name, but otherwise have almost nothing in common except that each

represents an interference with the right of the plaintiff to be let alone." Foncello v. Amorossi, 284 Conn. 225, 234 (2007). The four categories are: (1) unreasonable intrusion upon the seclusion of another; (2) appropriation of the other's name or likeness; (3) unreasonable publicity given to the other's private life; and (4) publicity that unreasonably places the other in a false light before the public. See id (citing Goodrich v. Waterbury Republican-American, Inc., 188 Conn. 107, 127-28 (1982)).

Allen and Whitman do not specify in their Fifth Amended Complaint which category of invasion of privacy they are alleging. However, based on their allegations and their briefs in opposition to the defendants' Motions to Dismiss, it appears that they are alleging a claim for unreasonable intrusion upon the seclusion of another. See Pl. Mem. in Opp. Metlife's Mot. to Dismiss at 17. In their Fifth Amended Complaint, they claim that Cosme, a Metlife employee, "participated in theft or unauthorized access to Allen's employee record," and that MLS and PDA "gained unauthorized access to Allen's employee file when the party administrator [Metlife] provided . . . [them] with medical and non-medical documentation" including Whitman's FMLA certification. Fifth Am. Compl. ¶¶ 110-11.

The claim of unreasonable intrusion upon the seclusion of another "consists solely of an intentional interference with [a person's] interest in solicitude or seclusion, either as to his person or as to his private affairs or concerns, of a kind that would be highly offensive to a reasonable man." Bremmer-McLain v. City of New London, 2012 WL 2477921, at *14 (Conn. Super. June 1, 2012). The intrusion may be physical, but it does not have to be; it may be some other form of investigation or examination into the plaintiff's private concerns. Id.

### 1.  MLS and PDA

MLS argues[3] that Allen and Whitman fail to raise a claim for unreasonable intrusion upon the seclusion of another, as a matter of law, because Allen and Whitman allege that Metlife gave MLS Whitman's FMLA certification.  See MLS's Mem. in Supp. Mot. to Dismiss at 7; see also Fifth Am. Compl ¶ 111 (alleging that Metlife provided Whitman's FMLA certification to both MLS and PDA).  The Fifth Amended Complaint is void of allegations that MLS and PDA intruded into Allen and Whitman's personal lives to obtain the FMLA certification.  See id. at *15 (stating that the claim for unreasonable intrusion upon the seclusion of another failed because the complaint was void of allegations that the defendant obtained Bremmer-McLain's personal letter by opening his personal mail or intruding upon his personal life in some way).  The allegations in the Fifth Amended Complaint cannot form the basis of an unreasonable intrusion upon the seclusion of another claim against MLS and PDA because, as alleged by Allen and Whitman, it was another party that committed the intrusion.  Therefore, Count Five is dismissed as against MLS and PDA.

### 2.  Verizon

Verizon argues that the claim for unreasonable intrusion into the seclusion of another must be dismissed as to it because Allen and Whitman "fail to allege that

---

[3] PDA argues that Allen and Whitman fail to raise a claim against it for unreasonable intrusion into the seclusion of another because the plaintiffs have not alleged that the parties had a relationship. See PDA's Mem. in Supp. Mot. to Dismiss at 6.  It is not an element of a claim for invasion of privacy that the plaintiff and defendant have a relationship.  See, e.g., Bremmer-McLain, 2012 WL 2477921, at *14 (setting forth elements). Although PDA does not offer any other argument to rebut Allen and Whitman's claim for unreasonable intrusion into the seclusion of another, it does note—while discussing the possibility that Allen and Whitman brought a claim for invasion of privacy based on the category of unreasonable publicity given to the other's private life—that it cannot be liable for providing allegedly unauthorized information to Metlife when Metlife was the one who originally provided PDA with the information.  Id.  The court will consider this argument generally in determining whether Allen and Whitman stated a claim under any of the categories of invasion of privacy.

Verizon did anything that would constitute an invasion of privacy." Verizon's Mem. in Supp. Mot. to Dismiss (Doc. No. 95) at 16. Allen and Whitman merely allege in conclusory terms that Verizon committed an unauthorized intrusion. Fifth Am. Compl. ¶ 109. However, nowhere in the Fifth Amended Complaint do Allen and Whitman allege that Verizon took anything from Allen; rather they allege that Verizon should have protected Allen's employee file. Fifth Am. Compl. ¶ 113. Because the plaintiffs do not allege an intentional intrusion by Verizon, their claim against Verizon fails.

### 3.   Metlife

Metlife argues that Allen and Whitman do not—and cannot—allege that Metlife intruded on their seclusion because, although Allen and Whitman allege that Metlife participated in theft or unauthorized access of Allen's employee record, this allegation is belied by their admission that Allen provided Metlife with Whitman's FMLA certification. See Metlife's Mem. in Supp. Mot. to Dismiss at 13; see also Fifth Am. Compl. ¶ 3. To the extent that Allen and Whitman claim that Metlife improperly accessed Whitman's FMLA certification after its authority to view the certification had expired, Metlife argues that Allen and Whitman fail to allege facts to raise the reasonable inference that Metlife intentionally accessed Whitman's FMLA certification. See Metlife's Mem. in Supp. Mot. to Dismiss at 13-14.

Regardless of the factual allegations set forth in the Fifth Amended Complaint, Allen's claim against Metlife fails because it is preempted by ERISA, see supra, p. 8-10. Any intrusion to obtain Whitman's FMLA certification occurred in the process of determining whether Allen should receive STD benefits. See Darcangelo, 292 F.3d at

188 (stating that, if the plan administrator obtained the plaintiff's medical information in the course of processing a benefits claim, the claims are preempted).

As for Whitman, just as with her claim for intentional infliction of emotional distress, she has alleged facts, at least at this stage of litigation, to allow the court to draw the reasonable inference that Metlife intentionally interfered with her private affairs.  Whitman alleges that, "Cosme of Metlife gained unauthorized access" to her FMLA certification and contacted her physician on March 26, 2010, even though Allen spoke to Cosme on March 25, 2010, "and provided Cosme . . . [with the] full details of her Health Care Provider information."  Fifth Am. Compl. ¶¶ 12, 308.  Therefore, Metlife's Motion to Dismiss as to Count Five, as brought by Whitman, is denied.

### 4.   Unreasonable publicity

Although Allen and Whitman appear to only raise a claim for unreasonable intrusion upon seclusion, in an abundance of caution, the defendants have also argued that the Fifth Amended Complaint fails to raise a claim for unreasonable publicity given to the other's private life.  See e.g., Metlife's Mem. in Supp. Mot. to Dismiss at 14.  In an equal abundance of caution, the court will consider their arguments.

To state a claim for unreasonable publicity given to the other's private life, the plaintiffs must allege that the defendants publicly disclosed a matter that (1) "would be highly offensive to a reasonable person, and (2) is not of a legitimate concern to the public."  Bremmer-McLain, 2012 WL 2477921, at *15.  "Publicity . . . means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."  Id.

16

Allen and Whitman allege that Metlife disclosed Whitman's FMLA certification to MLS and PDA, see Fifth Am. Compl ¶ 111, and that MLS and PDA used that same information in their reports, which were sent to Metlife.  See Fifth Am. Compl. ¶¶ 378, 391-92.  These disclosures are simply too limited to constitute an invasion of privacy.  See e.g., Bremmer-McLain, 2012 WL 2477921, at *15 (stating that it is not an invasion of privacy to communicate a fact concerning the plaintiff's private life to a small group of persons); Grigorenko v. Pauls, 297 F.Supp.2d 446, 448-49 (D. Conn. 2003) (analyzing the publication requirement for a claim of false light invasion of privacy and determining that communicating to nine people at Yale and three people outside of Yale does not constitute public disclosure).  For this reason, if the plaintiffs attempted to allege a claim for unreasonable publicity given to the other's private life, it is dismissed.

D. False light

Allen alleges a claim of false light against PDA in Count Eight.  The definition of false light invasion of privacy is as follows:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

Id. at 448.  Allen alleges that PDA created a false peer review report which suggested that Allen suffered from the medical inflictions that her mother, Whitman, suffered.  Fifth Am. Compl. ¶ 149.  This claims fails for the same reason a claim for unreasonable publicity given to the other's private life fails, see supra, pp. 16-17.  Allen alleges that PDA

sent this false report only to Metlife.[4]  Fifth Am. Compl. ¶¶ 150, 367.  Distribution to one

other entity does not constitute "public" disclosure.  See Grigorenko, 297 F.Supp.2d at

448-49.

   E.  Breach of contract claims

   Allen and Whitman allege claims of breach of contract against Verizon in Count

One and Metlife in Count Two.  Allen alleges breach of contractual duty against Metlife

in Count 17, while Whitman alleges breach of contractual duty against Metlife in Count

18.  Allen and Whitman together allege breach of contractual duty against PDA in Count

19, and against MLS in Count 20.  Under Connecticut law, the elements of a breach of

contract are "the formation of an agreement, performance by one party, breach of the

agreement by the other party and damages."  Rosato v. Mascardo, 82 Conn. App. 396,

411(Conn.App.Ct.2004) (quoting Bouchard v. Sundberg, 80 Conn. App. 180, 189,

(Conn. App. Ct. 2003)).

   1.  Breach of contract claim against Verizon

   Allen and Whitman allege that Verizon breached two agreements: Verizon's

Code of Conduct Policy and the Administrative Services Agreement entered into with

Metlife for the administration of FMLA and STD claims.  Fifth Am. Compl.  ¶¶ 37, 39.

Verizon argues that neither of these documents can form the basis of a breach of

contract claim because they were not agreements entered into between Verizon and

Allen or Whitman.  Verizon's Reply at 5.

---

[4] Allen alleges that Verizon "used" PDA's report.  Fifth Am. Compl. ¶ 150.  However, there are no
allegations that PDA sent the report to Verizon.  Allen alleges only that PDA had an agreement with
Metlife to prepare a peer review report. Fifth Am. Compl. ¶ 367.

18

First, as to Verizon's Code of Conduct Policy, Verizon argues that there are no allegations to suggest that the Code of Conduct Policy constituted an agreement conferring rights of any kind on Allen and Whitman.  Id.  Verizon cites to an Exhibit 35, purportedly attached to the plaintiffs' Fifth Amended Complaint, which includes the Code of Conduct Policy.  Id.  According to Verizon, the Code of Conduct Policy explicitly disclaims giving employees rights of any kind and states that the policy can be changed by Verizon at any time.  Id.  Therefore, because under Connecticut law, personnel manuals are not considered contracts if they eschew "language that could reasonably be construed as a basis for a contractual promise . . . [or include] appropriate disclaimers of the intention to contract," Finley v. Aetna Life and Cas. Co., 202 Conn. 190, 199 n.5 (1987) (overturned on other grounds), a breach of the Verizon Code of Conduct cannot form the basis of a breach of contract claim.  See Verizon's Reply at 5.

The court cannot find an Exhibit 35 attached to the plaintiffs' Fifth Amended Complaint.  However, the plaintiffs supplied the Code of Conduct as an attachment to its Motion for Leave to File a Fourth Amended Complaint (Doc. No. 64).  The attached policy does, in fact, include appropriate disclaimers of the intention to contract. Therefore, it cannot form the basis of Allen and Whitman's breach of contract claim.[5] See Gaudio v. Griffin Health Serv. Corp., 249 Conn. 523, 533 (1999) (allowing a claim for breach of contract to go forward because the personnel manual at issue did not include express language definitively stating that the employees were at-will).

---

[5] Furthermore, as Verizon argues, even if the Code of Conduct were to constitute a contract between Verizon and Allen—an employee of Verizon—there are no allegations to support the claim that Whitman was a party to such a contract.  There is no allegation that Whitman was an employee of Verizon or that the Code of Conduct applied to her in any way.  See Verizon's Reply at 5.

Second, as to the Administrative Services Agreement entered into with Metlife for the administration of FMLA and STD claims, Verizon argues that Allen and Whitman have failed to allege any facts to support a conclusion that they are third-party beneficiaries to the Agreement.  Verizon's Reply at 6.  "In general, in order to claim breach of contract, the plaintiff must be a party to the contract."  Reyes v. Nautilus Ins. Co., 2012 WL 1004302, at *4 (Conn. Sup. Ct. Mar. 6, 2012).  However, Connecticut courts have recognized an exception when the party bringing suit is an intended third party beneficiary.  Id.  "A third party beneficiary may enforce a contractual obligation without being in privity with the actual parties to the contract."  Id. (quoting Rapaport & Benedict, P.C. v. Stamford, 39 Conn. App. 492, 497 (1995)).

"[T]he ultimate test to be applied [in determining whether a person has a right of action as a third party beneficiary] is whether the intent of the parties to the contract was that the promisor should assume a direct obligation to the third party [beneficiary]."  Id. (quoting Dow & Condon, Inc. v. Brookfield Development Corp., 266 Conn. 572, 580-81 (2003)).  "[I]ntent is to be determined from the terms of the contract read in the light of the circumstances attending its making, including the motives and purposes of the parties."  Id.

Although Allen and Whitman state in conclusory terms that they are third-party beneficiaries, the court has the benefit of reviewing the Administrative Services Agreement.[6]  While it is true that the Administrative Services Agreement explicitly states

---

[6] "Even where a document is not [attached to a complaint or] incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint."  Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (citing Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)).  As Allen and Whitman's breach of contract claims rest on the obligations set forth in the Administrative Services Agreement, the court will consider the Agreement in its Ruling.

that "[n]othing in this [Indemnification] section is intended, nor shall it be interpreted, to give any third party, including but not limited to Participants, any right, claim or cause of action against the Indemnified Party or Supplier,"  Metlife's Mem. in Supp. Mot. to Dismiss, Ex. B., at 11, this third-party disclaimer is only listed in the "Indemnification" section and does not apply to the entire Agreement.  In the Agreement, both Verizon and Metlife agree to keep health data—obtained during the performance of Metlife's duties and obligations under the Agreement—private and confidential.  Id. at 6 (listed under the heading "Privacy of Medical Records: Mutual Obligations of Supplier [Metlife] and Verizon Wireless").  Verizon further agrees to "undertake those efforts reasonably deemed necessary by Supplier to protect the information used in connection with the Supplier's administration, evaluation, analysis, or management of Verizon Wireless' disability plans, leave of absence programs or Family and Medical Leave Act compliance obligations subject to this Service Agreement."  Id. at 7 (section 12.2).  As the beneficiary of the programs subject to the Service Agreement and the individual whose medical information Verizon and Metlife promise to keep confidential, Allen and Whitman, respectively, are the intended beneficiaries of the contracting parties' promises.  Therefore, at this stage of litigation, the court concludes that there are enough facts in the Fifth Amended Complaint to plausibly assert that the parties to the Administrative Services Agreement—Verizon and Metlife—intended to assume a direct

obligation to Allen and Whitman.[7]  See Dow & Condon, 266 Conn. at 580-81.

Therefore, Verizon's Motion to Dismiss Count One is denied.

    2.  Breach of contract claims against Metlife

        a.  Claim for ERISA

In Count Two, Allen alleges that she entered into a contract with Metlife when she applied for STD benefits, and that Metlife breached that contract when it wrongfully denied her medical benefits.  Fifth Am. Compl. ¶¶ 70-71.  Although titled as a claim for breach of contract, this count appears to state a claim pursuant to section 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. See Fifth Am. Compl. ¶ 72 (stating that plaintiff can bring a lawsuit regarding wrongful denial of benefits according to ERISA section 502(a)(1)(B)).  Metlife has not moved to dismiss this claim for denial of benefits under section 502(a)(1)(B) of ERISA; therefore, the court does not consider it.  See Mem. in Supp. Mot. to Dismiss at 7, n.7 (recognizing, without further discussion, that "Allen has improperly asserted her ERISA §502(a)(1)(B) cause of action as part of her state law breach of contract cause of action, but does actually invoke her ERISA rights to pursue a claim for benefits in the second count.").

        b.  Common law breach of contract

In Counts 17 and 18, Allen and Whitman, respectively, allege common law breach of contract claims against Metlife.  They argue that they were third party

---

[7] Verizon attempts to argue that Allen and Whitman's claims for breach of contract are preempted by ERISA.  However, to the extent that Allen and Whitman are alleging that Verizon breached its obligation to keep medical records submitted on behalf of an FMLA claim confidential, that obligation arises from, and relates to, Verizon's obligation under the FMLA and not under the STD policy (only the latter of which is an ERISA plan).

beneficiaries to the Administrative Services Agreement between Verizon and Metlife and, in addition, that Metlife breached its Customer Privacy Policy.  As to the Customer Privacy Policy, Metlife argues that it is not a contract because Allen and Whitman have failed to allege facts that they entered into an agreement with Metlife based on a mutual meeting of the minds.  Metlife's Mem. in Supp. Mot. to Dismiss at 18.  Allen and Whitman merely claim that Metlife has a Customer Privacy Policy.  Fifth Am. Compl. ¶ 331.

However, for the reasons discussed above, see supra, pp. 20-21, the Administrative Services Agreement includes enough facts to plausibly suggest that Allen and Whitman are third-party beneficiaries to the Agreement and that Verizon and Metlife intended to create a direct obligation to Allen and Whitman to keep medical information provided pursuant to the FMLA confidential. Therefore, Metlife's Motion to Dismiss is denied as to Counts 17 and 18.[8]

3.  Breach of contract claims against MLS and PDA

The crux of Allen and Whitman's claims against both PDA and MLS is that they "owed Whitman and Allen as third-party beneficiaries to the contract[s] between Metlife and" PDA and MLS.  Fifth Am. Compl. ¶¶ 357, 374.  The contracts between Metlife and PDA and MLS were to provide an accurate peer review for claims relating to STD.  Id. at ¶¶ 359, 382.  Therefore, according to Allen and Whitman, PDA and MLS breached the

---

[8] Again, as with Allen's claim for breach of contract against Verizon, to the extent that Allen and Whitman are alleging that Verizon breached its obligation to keep medical records submitted on behalf of an FMLA claim confidential, that obligation arises from and relates to Metlife's obligation under the FMLA and not under the STD policy (only the latter of which is an ERISA plan).  Therefore, the claim is not preempted.

contracts with Metlife by failing to provide an accurate peer review of Allen's medical information, as their reviews included information from Whitman's FMLA certification.

Both PDA and MLS argue that Allen and Whitman have failed to allege that they are third party beneficiaries to the Metlife contracts with PDA and MLS.  See PDA's Mem. in Supp. Mot. to Dismiss at 8; MLS's Mem. in Supp. Mot. to Dismiss at 9.  There are no allegations in the Fifth Amended Complaint to plausibly suggest that PDA and MLS intended to assume a direct obligation to Allen or Whitman.  Allen and Whitman merely state, without more, that the two are third-party beneficiaries to the contracts. Furthermore, the fact that PDA and MLS were completing the peer review on Allen's claim does not offer any support to the plaintiffs' argument that they were third-party beneficiaries.  "The fact that a person is a foreseeable beneficiary  of a contract is not sufficient for him to claim rights as a third party beneficiary." Grigerik v. Sharpe, 247 Conn. 293, 318 (1998).  Therefore, Allen and Whitman's claims for breach of contractual duty in Counts 19 and 20 are dismissed without prejudice to replead facts that plausibly allege that Allen and Whitman are third-party beneficiaries to the contracts between Metlife and MLS and PDA.

F.  Breach of fiduciary duty

In Counts 23 and 24, Allen and Whitman allege claims for breach of duty against PDA and MLS.  In addition to alleging that PDA and MLS failed to exercise reasonable care, the plaintiffs claim that they "have material evidence that prove that the Defendants . . . [PDA and MLS] breach fiduciary duties."  Fifth Am. Compl. ¶¶ 419, 437. Because Allen and Whitman raise claims for general negligence against PDA and MLS

in other counts, the court will construe these claims—as the defendants did—as ones for breach of fiduciary duty.

To state a claim for breach of fiduciary duty, the plaintiff must first allege that a fiduciary duty exists. Biller Assoc. v. Peterken, 269 Conn. 716, 721-22 (2004). "[A] fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other." Id. at 723 (citing Hi-Ho Tower, Inc. v. Com-Tronics, Inc., 255 Conn. 20, 38 (2000)). "In the seminal cases in which . . . [the Supreme Court of Connecticut] has recognized the existence of a fiduciary relationship, the fiduciary was either in a dominant position, thereby creating a relationship of dependency, or was under a specific duty to act for the benefit of another." Hi-Ho Tower, 255 Conn. at 38. The Supreme Court has refused to recognize, as a matter of law, a fiduciary relationship when the parties were dealing at arm's length or when the parties were not engaged in a relationship of special trust and confidence. Id. at 39.

Allen and Whitman have failed to allege facts to suggest that they had a fiduciary relationship with PDA and MLS. None of the allegations in the Fifth Amended Complaint suggest Allen or Whitman ever interacted with PDA or MLS, let alone had a relationship of special trust and confidence. As discussed earlier, see supra, p. 24, there are similarly no allegations to plausibly suggest that PDA or MLS were under a specific duty to act for the benefit of Allen or Whitman. Therefore, Allen and Whitman's claims for breach of fiduciary duty are dismissed as to PDA and MLS, with leave to replead facts that plausibly allege the existence of a fiduciary relationship.

G.  Breach of implied oral contract

Allen alleges in Count 11 that Verizon breached an implied oral contract after it failed to provide Allen with two "Recognizing You" certificates valuing $75.  Fifth Am. Compl. ¶¶ 230-231.  "An implied contract is an agreement between the parties which is not expressed in words but which is inferred from the acts and the conduct of the parties . . . .  The test is whether the conduct and acts of the parties show an agreement." Brighenti v. New Britain Shirt Corp., 167 Conn. 403, 406, 356 A.2d 181 (1974) (internal citations omitted).  "The elements of a breach of an implied contract action are the formation of an agreement, performance by one party, breach of the agreement by the other party and damages."  Mahov v. Chicago Title Ins. Co., 2012 WL 3544883, at *2 (D. Conn. Aug. 16, 2012) (citing Pelletier v. Galske, 105 Conn.App. 77, 81, 936 A.2d 689 (2007)).

Verizon argues that Allen fails to allege that she and Verizon entered into a contract.  Verizon's Mem. in Supp. Mot. to Dismiss at 13.  All that Allen alleges is that Verizon offered her two certificates worth $75, and that Allen never received them.  Fifth Am. Compl. ¶¶ 230-231.  These allegations cannot form the basis of a breach of implied contract claim as Allen merely alleges an offer without any acceptance or performance.[9] Therefore, Allen's claim for breach of implied contract is dismissed.

H.  Negligence claims

Allen and Whitman allege claims of negligence against Verizon and Metlife in Count Seven, PDA in Count 22, and MLS in Count 26. Allen and Whitman also bring a

---

[9] Further, Allen attached emails to her opposition to Verizon's Motion to Dismiss—exhibits which were not included in her Fifth Amended Complaint— which show that Allen was communicating with a vendor, Augeo Incent, regarding these certificates, and not Verizon.  See Pl. Mem. in Opp. Verizon's Mot. to Dismiss, Ex. 40.

claim against Verizon in Count Six for "breach of duty" for failing to properly select and monitor service providers.

The court will consider the "failure to select" claim against Verizon first, as it can be summarily dismissed. Under Connecticut law, to prevail on a claim for negligence, a plaintiff must prove: (1) duty; (2) breach of that duty; (3) causation; and (4) actual injury or damages. See Murdock v. Croughwell, 848 A.2d 363, 367 (Conn. 2004). "[A] duty of care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act." Gerber Trade Finance, Inc. v. Davis, Sita & Co., P.A., 128 F.Supp.2d 86, 95 (D. Conn. 2001) (citing Burns v. Board of Educ., 228 Conn. 640, 646, 638 A.2d 1 (1994)). The court is unaware of any basis for a duty Verizon owed Allen and Whitman to select and monitor a plan administrator. See Verizon's Mem. in Opp. Mot. to Dismiss at 18 (stating that the plaintiffs "merely assert that it [Verizon] had a duty, but fail to allege how this duty came about"). Therefore, Count Six is dismissed.

Moving to the claims for general negligence against the four defendants, as Verizon argues, Allen and Whitman cannot maintain a negligence claim against the defendants because they have only alleged emotional injury as a result of the alleged negligence. Verizon Mem. in Opp. Mot. to Dismiss at 19 (citing Fischer v. Yale Univ., 2006 Conn. Super. LEXIS 386, at *2 (Conn. Super. Ct. Feb. 8, 2006)). "Emotional injury can provide the basis of a claim for simple negligence only as a consequence of a physical injury." Fischer, 2006 Conn. Super. LEXIS 386, at *2 (citing Bushnell v. Bushnell, 103 Conn. 583, 594 (1925)).

Allen and Whitman allege that, due to Verizon and Metlife's alleged negligence, they experienced "conscious pain and suffering and physical injuries, medical expenses, and other damages." Fifth Am. Compl. ¶ 145. As for MLS and PDA, Allen alleges that her "depression and anxiety worsened," she "began to vomit, cry and worry excessively about the future," and she suffered a "fear of loneliness and sleeplessness." Fifth Am. Compl. ¶¶ 408-09. These injuries are "purely emotional or are physical manifestations of emotional injuries, and therefore cannot provide the basis for [a] negligence cause[] of action." Fischer, 2006 Conn. Super. LEXIS 386, at *2.

However, rather than dismiss these claims, the court will, given plaintiffs' pro se status, construe them as claims for negligent infliction of emotional distress. Under Connecticut law, a cause of action for negligent infliction of emotional distress requires a showing "that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it was caused, might result in illness or bodily harm." Perodeau v. City of Hartford, 259 Conn. 729, 748–49 (2002) (quoting Montinieri v. S. New England Tel. Co., 175 Conn. 337, 345 (1978)); see Miner v. Town of Chesire, 126 F. Supp. 2d 184, 197 (D. Conn. 2000). Or, in other words, "[i]n order to prevail on a negligent infliction of emotional distress claim, the following elements must be proven: '(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress.'" Vega v. Sacred Heart Univ., Inc., 871 F.Supp.2d 81, 85 (D. Conn. 2012) (citing Carrol v. Allstate Ins. Co., 262 Conn. 433, 444 (2003)).

1.  Verizon

The court will consider Allen and Whitman's claims separately.  First, as to Allen, her claim against Verizon must fail because, "[i]n the employment context, liability for negligent infliction of emotional distress cannot arise from behavior that is part of an ongoing relationship.  It can arise only from conduct occurring in the termination process."  Mody v. Gen. Electric Co., 2006 WL 1168051 at *3 (D. Conn. Apr. 26, 2006) (internal quotation marks and citations omitted); Perodeau, 259 Conn. at 762–63 (holding that municipal employer could not be liable for negligent infliction of emotional distress claim based on conduct occurring "within a continuing employment context" rather than "in the termination of employment").  Because Allen's claim for negligent infliction of emotional distress does not pertain to any actions taken by Verizon in the termination process, Allen's claim must fail.

As for Whitman, she claims that she was injured when Verizon negligently failed to protect her FMLA certification.[10]  Fifth Am. Compl. ¶ 140.  Although the claim is not particularly clear, when taking the Fifth Amended Complaint as a whole, there are facts plausibly alleged that Verizon should have known that, by failing to protect Whitman's private, confidential medical information, she could suffer emotional harm.  Therefore, Verizon's Motion to Dismiss Count Seven, as to Whitman, is denied.

2.  Metlife

Because the court has construed Allen and Whitman's cause of action for negligent infliction of emotional distress, Allen and Whitman must allege facts to

---

[10] To the extent that Verizon argues that Whitman's claim is preempted by ERISA, the court disagrees.  Any duty owed to Whitman to keep the medical certification confidential arises out of the FMLA and not the STD Plan.

plausibly assert "that the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it was caused, might result in illness or bodily harm." Perodeau, 259 Conn. 729, 748–49 (2002) (quoting Montinieri 175 Conn. at 345); see also Vega v. Sacred Heart Univ., Inc., 871 F.Supp.2d 81, 85 (D. Conn. 2012) ("In order to prevail on a negligent infliction of emotional distress claim, the following elements must be proven: '(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress.'") (citing Carrol v. Allstate Ins. Co., 262 Conn. 433, 444 (2003)).

Taking Whitman's claim first, she has alleged that Metlife, by failing to keep her FMLA certification confidential, created an unreasonable risk of causing Whitman emotional pain. Fifth Am. Compl. ¶ 140 (stating that "Metlife has a duty to administer FMLA claims for Verizon . . . [and] failed to protect Whitman['s] . . . confidential . . . medical records"). Such allegations, at this stage of litigation and by a pro se plaintiff, are enough to survive a Motion to Dismiss.

As for Allen's claim, the court has difficulty seeing how Allen has stated a claim that Metlife's conduct created an unreasonable risk of causing her emotional distress. To the extent that Allen's claim rests on Metlife's failure to protect the FMLA certification, it was only foreseeable that such a breach in confidentiality would harm Whitman, the person whose medical information was breached. To the extent that Allen's claim rests on Metlife's use of Whitman's confidential information against Allen in denying her STD benefit claim, such a claim is preempted by ERISA. Therefore, Allen's

negligence claim against Metlife—construed as a claim for negligent infliction of emotional distress—is dismissed without prejudice to replead with facts that plausibly allege that Metlife's failure to protect Whitman's FMLA certification created an unreasonable and foreseeable risk of causing harm to Allen.

   3.  PDA and MLS

According to Allen and Whitman, both PDA and MLS had a legal duty to provide an accurate peer review of Allen's medical claim.  Fifth Am. Compl. ¶¶ 407, 425.  They also had a duty to "protect patients unlawful confidential protected employee records and to base Allen's review solely on Allen's medical documentation not Whitman's medical information."  Fifth Am. Compl. ¶ 424; see also ¶ 406.  Allen and Whitman allege that the two peer review companies "should have known that when Allen and Whitman reviewed the administrative file ending with 8804 that included . . . Whitman's unauthorized medical documentation . . . this would cause extreme emotional distress."  Fifth Am. Compl. ¶ 408.

MLS argues that these allegations are insufficient to plausibly state a claim for negligent infliction of emotional distress.  MLS Mem. in Opp. Mot. to Dismiss at 17.  MLS claims that there are no facts to support a claim that Allen and Whitman's distress was foreseeable or that "emotional distress is a foreseeable result of reading a review of a short-term disability claim."  Id.  However, at this stage of litigation, construing claims by pro se plaintiffs, the court disagrees.  Allen and Whitman allege that MLS and PDA negligently used Whitman's FMLA certification in reviewing Allen's claim and that the use of Whitman's medical information caused emotional distress to Whitman—because her confidential information was used without her consent—and to Allen—because she

believed MLS and PDA would provide an accurate review.  See Fifth Am. Compl. ¶¶ 405-06, 418.  Therefore, MLS and PDA's Motions to Dismiss Counts 22 and 26— construed as claims for negligent infliction of emotional distress—are denied.

I.   Breach of ADA confidentiality

Allen alleges in Count 16 that Verizon violated the ADA by breaching Allen's confidentiality.  Section 12112(d) of the Americans with Disabilities Act requires employees to treat information obtained regarding the medical condition or history of any employee as a confidential medical record and to maintain such information on separate forms and in separate medical files.  See 42 U.S.C. § 2112(d)(C).  According to Allen, she only authorized Verizon to use Whitman's FMLA certification to determine whether she could obtain FMLA leave as part of her 5978 claim.  Fifth Am. Compl. ¶ 292.  Any further use of the FMLA certification, according to Allen, breached her confidentiality.

First, Verizon questions whether Allen may bring a claim for breach of ADA confidentiality without bringing a claim for discrimination under the ADA.  See Verizon's Mem. in Supp. Mot. to Dismiss at 30.  In Giaccio v. City of New York, 308 Fed. Appx. 470, 471 (2d Cir. 2009), the Second Circuit raised the possibility that a violation of the confidentiality provision of the ADA is not actionable without demonstrating discrimination.  However, the Second Circuit ultimately did not decide whether discrimination is necessary to bring such a claim because it held that the plaintiff did not present evidence raising an inference that her drug test records were disclosed by the defendant.  See id.  Because any discussion of a discrimination requirement in Giaccio is dicta, the court will continue to consider whether Allen has alleged facts to plausibly

suggest that Verizon violated her confidentiality.[11]

Verizon next argues that Allen cannot state a claim for relief because the records at issue are Whitman's medical records, and not her own.  <u>See</u> Verizon's Mem. in Supp. Mot. to Dismiss at 30.  Allen appears to argue in response that, because Whitman's medical information should be protected pursuant to the FMLA, it should also be protected under the ADA's confidentiality provision.  <u>See</u> Pl. Mem. in Opp. Verizon's Mot. to Dismiss at 45.  The court has not found any case in which a plaintiff brought a claim for violation of the ADA's confidentiality provision based on disclosure of another person's medical records.  The cases that address whether disclosure of an FMLA certification constitutes a violation of section 12112(d) all include medical information regarding the employee, and not a family member.  <u>See</u> <u>e.g.</u>, <u>Doe v. U.S. Postal Service</u>, 317 F.3d 339 (D.C. Cir. 2003) (disclosure of employee's HIV status on FMLA form).  Furthermore, in <u>Doe</u>, the court held that disclosure of an FMLA form is only a violation of the ADA's confidentiality requirement if the form was submitted in response to the employer's request (1) for information in connection with a voluntary medical examination which is part of an employee health program available to employees at the work site, or (2) for information regarding the ability of an employee to perform job-related functions.  <u>Id.</u> at 345; <u>see also</u> 42 U.S.C. § 12112(d)(4)(B).  Allen submitted Whitman's FMLA form so she could take leave to care for Whitman, not so she could

_____

[11] In <u>Cossette v. Minnesota Power & Light</u>, 188 F.3d 964, 970 (8th Cir. 1999), the court explained that the plaintiff needed to establish that the defendant's violation of the ADA under section 12112(d)—disclosing the plaintiff's back injury—caused some sort of tangible injury.  However, the court did not decide whether that injury must be an "adverse employment action" as required to raise a claim for disability discrimination pursuant to section 12112(a).  <u>Id.</u> at 971.  Allen merely alleges in a conclusory manner that Whitman's genetic information was used as a factor leading to her discharge.  Fifth Am. Compl. ¶ 209.

take leave because of her own medical needs.  C.f. Doe, 317 F.3d at 345 (stating that, when the plaintiff submitted his FMLA certification so he could take leave due to his own medical problems, the employer was seeking to determine whether the plaintiff was unable to perform the functions of his position).  Because the FMLA certification includes Whitman's medical information—not Allen's—and was submitted to Verizon for a purpose other than the two categories set forth in section 12112(d)(4)(B), Allen's claim for breach of ADA confidentiality is dismissed.

    J.  <u>Discrimination based on perceived disability, wrongful discharge</u>

    Allen brings a claim for discrimination/wrongful discharge against Verizon in Count Nine.  It appears that, within Count Nine, Allen is attempting to raise three claims: wrongful discharge; creating a hostile work environment, in violation of the ADA; and discrimination based on perceived disability, in violation of the ADA.  The court will consider each claim in turn.

    1.  Wrongful discharge

    Allen claims that she was unlawfully terminated because of her perceived disability, actual disability, and Whitman's genetic information.  Fifth Am. Compl. ¶¶ 209-10.  As Verizon argues, a plaintiff is precluded from bringing a claim for wrongful discharge in violation of public policy when she has an adequate statutory remedy for the violation of public policy.  See Burnham v. Karl and Gelb, P.C., 252 Conn. 153, 164 (2000).  This is because, "the rationale underlying the tort of termination in violation of public policy is that 'permitting the discharge to go unaddressed would leave a valuable social policy to go unvindicated.'"  Van Kruiningen v. Plan B, LLC, 485 F.Supp.2d 92, 96 (D. Conn. 2007) (quoting Burnham, 252 Conn. at 182).

All of the bases for which Allen alleges Verizon unlawfully terminated her may be remedied by seeking statutory recourse.   Allen admits as much when she alleges that she was wrongfully terminated in violation of the public policies of the ADA, FMLA, GINA, and the Civil Rights Act of 1964.   Fifth Am. Compl. ¶ 212; see also Pl. Mem. in Opp. Verizon's Mot. to Dismiss at 32.   The public policies articulated in those statutes "are already safeguarded by the remedies enumerated in those statutes, and thus a claim for public policy wrongful discharge is not plaintiff's sole means for vindicating the anti-discrimination policy."   Storm v. ITW Insert Molded Prod., 400 F.Supp.2d 443 (D. Conn. 2005).   Therefore, Allen's claim for wrongful discharge is dismissed.

### 2.   Hostile work environment

Allen alleges that she was subjected to a hostile work environment based on her perceived disability.   Fifth Am. Compl. ¶ 164.   "To establish a claim of hostile work environment, 'the workplace [must be] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . .'"[12] Martin v. Town of Westport, 558 F.Supp.2d at 242 (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).   "'[I]n order to be actionable . . .  a[n] . . . objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."   Id. (quoting Britell v. Dept. of Correction, 247 Conn. 148, 167

---

[12] It should be noted that, "[t]he Second Circuit has yet to determine whether the ADA gives rise to a cause of action for hostile work environments."   Bonura v. Sears Roebuck & Co., 62 F. App'x 399, 400 n. 3 (2d Cir .2004).  However, certain district courts within the Second Circuit recognize such a cause of action, Monterroso v. Sullivan & Cromwell, LLP, 591 F.Supp.2d 567, 584 (S.D.N.Y.2008), and "the circuits that have reached this question have answered it in the affirmative."   Bonura, 62 F. App'x at 400 n. 3.

(1998)).  Furthermore, "[a] plaintiff must . . . demonstrate that she was subjected to the hostility because of her membership in a protected class."  Kassner v. 2nd Avenue Delicatessen, Inc., 496 F.3d 229, 241 (2d Cir. 2007).

To support her hostile work environment claim, Allen alleges that, six months after learning of Allen's chronic health condition, her supervisors pulled her off of a telephone call and brought her to a meeting to discuss her performance.  Fifth Am. Compl. ¶¶ 157-58, 160-61.  The meeting ran long and forced her to work past the end of her shift.  Fifth Am. Compl. ¶ 158.  According to Allen, she perceived the meeting to be hostile , and she felt "undermined" because she took FMLA and STD leave.  Fifth Am. Compl. ¶¶ 158, 161.  Allen also alleges that she was "placed under greater scrutiny and treated differently," and that this led to a downward trend in her performance.[13]  Fifth Am. Compl. ¶¶ 163-64.  She further claims that Verizon's denial of her requests for FMLA leave and failure to protect her confidential medical records contributed to the hostile work environment.  Fifth Am. Compl. ¶168; see also Pl. Mem. in Opp. Verizon's Motion to Dismiss at 31.

These allegations of being subjected to scrutiny and feeling undermined  do not suggest "severe and pervasive" treatment that altered the conditions of Allen's employment nor do they in any way suggest that Allen was treated in a hostile manner because of her disability.  See e.g., Balonze v. Town Fair Tire Centers, Inc., 2005 WL 752198, at * 4, 8-9(D. Conn. Mar. 31, 2005) (finding that allegations that an employer

---

[13] For the first time in her Opposition to Verizon's Motion to Dismiss, Allen alleges that she was subjected to 'staredowns' at work.  Pl. Mem. in Opp. Verizon's Motion to Dismiss at 31.  These allegations are not part of the Fifth Amended Complaint and will not be considered by the court. However, even if they were considered, it would not alter this analysis.

called the plaintiff "gimpy" and "useless" and complained about the plaintiff attending therapy during work hours did not meet the standard for a hostile work environment claim under the ADA); Murphy v. BeavEx, Inc., 544 F.Supp.2d 139, 151 (D. Conn. 2008) (stating that alleged harsh criticism is insufficient to establish a hostile work environment claim);  LaBella v. New York City Admin. for Children's Servs., 2005 WL 2077192, at *20 (E.D.N.Y. Mar. 28, 2005) ("[A]n employer's conduct is not hostile merely because it is unpleasant, harsh, combative or difficult.") (internal quotation marks omitted).  Allen's allegations are insufficient and, therefore, Allen's hostile work environment claim is dismissed.

### 3.  Discrimination based on perceived or actual disability

Allen alleges that Verizon discriminated against her because of her disability, in violation of the ADA, by terminating her employment on January 14, 2011.  Fifth Am. Compl. ¶ 197.  The ADA provides, inter alia, that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." See 42 U.S.C. § 12112(a).  To state a claim for disability discrimination under the ADA, a plaintiff must allege that: (1)[her] employer is subject to the ADA; (2)[she] was disabled within the meaning of the ADA; (3)[she] was otherwise qualified to perform the essential functions of [her] job, with or without reasonable accommodation; and (4)[she] suffered adverse employment action because of [her] disability."  Rieger v. Orlor, Inc., 427 F.Supp.2d 105, 115 (D. Conn. 2006) (quoting Giordano v. City of New York, 274 F.3d 740, 748 (2d Cir.2001)).

Verizon argues that "Allen's allegations that Verizon terminated her . . . because she was disabled, or perceived as such, amount to nothing more than a legal conclusion that is 'not entitled to be assumed true.'"  Verizon's Mem. in Supp. Mot. to Dismiss at 24.  Verizon relies on Fritz v. The Eye Center, 2010 U.S. Dist. LEXIS 81805 (D. Conn. Aug. 11, 2010), to support its argument.  In Fritz, the court held that the plaintiff established that she suffered from a disabling disease, that the defendant knew about her condition, and that she had collected an unspecified number of sick absences over her eight year employment due to this condition.  Id., at *11.  However, according to the court, such allegations do not raise an inference that the plaintiff was terminated because of her condition.

Unlike Fritz, Allen alleges that she had attempted to contact her supervisor via email regarding her absences, but was told that she had to call her supervisor instead. Fifth Am. Compl. ¶ 189.  According to Allen, she had a difficult time speaking on the telephone due to her serious health condition.  Fifth Am. Compl. ¶ 189.  In addition, her supervisor knew she was ill and could not advocate for herself.[14]  Fifth Am. Compl. ¶ 180.  Ultimately, Verizon terminated Allen for alleged job abandonment after restricting the best method for Allen to communicate her absences.  Fifth Am. Compl. ¶¶ 196, 236.

Although not a model of clarity or the most plausible claim for disability discrimination possible, the court cannot conclude at this stage of litigation that Allen has not stated a claim for relief.  If Verizon interfered with Allen's ability to explain her absences to her supervisors—knowing that Allen could not comply with the change in

---

[14] Verizon argues that Allen does not allege that she informed Verizon of her inability to speak over the phone.  Verizon's Mem. in Supp. Mot. to Dismiss at 27.  Allen's allegation that her supervisor knew that she could not advocate for herself, Fifth Am. Compl. ¶ 180, when construed in Allen's favor, suggests that she informed her supervisor of her inability to speak over the telephone.

protocol due to her disability—and terminated her for failing to report her absences to her supervisors, then Allen can make out a prima facie case for disability discrimination.[15]  Therefore, Verizon's motion to dismiss Allen's claim for disability discrimination is denied.[16]

    K.  FMLA interference and retaliation

    Allen alleges FMLA interference and retaliation against Verizon in Counts 12 and 13.  "The FMLA entitles eligible employees to 'twelve workweeks per year of unpaid leave, 'because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.'  Ridgeway v. Royal Bank of Scotland Group, 2012 U.S. Dist. LEXIS 41995, at * 13 (D. Conn. 2012) (quoting Sista v. CDC Ixis North America, Inc., 445 F.3d 161, 174 (2d Cir. 2006)).

    1.  FMLA interference

    To state a claim for FMLA interference, Allen must allege: (1) she is an eligible employee under the FMLA; (2) Verizon is an employer as defined in the FMLA; (3) that

---

[15] Verizon's citation to Vandenbroek v. PSEG Power Conn., LLC, 2009 U.S. Dist. LEXIS 18320, at *17 (D. Conn. Mar. 10, 2009), does not alter this conclusion.  See Verizon's Mem. in Supp. Mot. to Dismiss at 26.  In Vandebroek, the plaintiff conceded that he was terminated for violating the company's no call/no show policy, and the court granted summary judgment to the defendant because the plaintiff did not produce any evidence to suggest that his disability was a factor in the termination decision.  The plaintiff only argued that his disability—alcoholism—was the reason why he violated the no call/no show policy.  Id.  The Vandebroek case is distinguishable for two reasons: (1) the court acted at the summary judgment stage rather than at the motion to dismiss stage; and (2) Allen, unlike Vandebroek, alleges that Verizon manipulated the no call/no show policy to prevent Allen from abiding by it.  Fifth Am. Compl. ¶ 189.

[16] For the first time, in her Sur-reply to Verizon's Reply at 6 (Doc. No. 120), Allen alleges that Verizon failed to offer her a reasonable accommodation—a leave of absence—under the ADA.  Allen did not allege this claim in her Fifth Amended Complaint.  Therefore, the court will not consider it.  However, Allen did allege that she requested an accommodation after she took a leave of absence in 2009.  She alleges that, after experiencing emotional distress, which caused her to be "confused, distraught and anxiety ridden," she requested a position that would not require her to speak on the telephone.  Fifth Am. Compl. ¶ 165.  According to Allen, Verizon "stated there were no offline position[s] and did not offer any options."  Id.  As Verizon did not move to dismiss a claim for failure to accommodate based on these allegations, the court will not consider it.

she was entitled to leave under the FMLA; (4) that she gave notice to Verizon of her intention to take leave; and (5) that she was denied benefits to which she was entitled under the FMLA.  Id. (citing Higgins v. NYP Holdings, Inc., 836 F.Supp.2d 182 (S.D.N.Y. 2011)).  Allen bases her FMLA interference claim on two instances in which Verizon denied her FMLA benefits: when she sought leave between September 2009 and November 2009, Fifth Am. Compl. ¶ 222, and when she sought leave between February 2010 and June 2010, Fifth Am. Compl. ¶ 225.

Verizon argues that Allen cannot state a claim for FMLA interference because she has admitted in her Fifth Amended Complaint that she was not entitled to FMLA leave during those time periods because she failed to provide necessary medical information within the designated deadline.  Verizon's Mem. in Supp. Mot. to Dismiss at 28; see also Fifth Am. Compl. ¶¶ 170, 217-18.  An employer may require an employee seeking leave pursuant to the FMLA to provide, in a timely manner, a certification issued by the health care provider of the eligible employee describing the appropriate medical facts regarding the condition, when the serious health condition started, and how long it is expected to continue.  29 U.S.C. § 2613.  "The employee must provide the requested certification to the employer within 15 calendar days after the employer's request, unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts or the employer provides more than 15 calendar days to return the requested certification."  29 C.F.R. 825.305(b).

Allen argues that she was exempt from the deadline because she had "extenuating circumstances."  Pl. Mem. in Opp. Verizon's Mot. to Dismiss at 39.  "The FMLA contains a built-in equitable provision in its regulations, specifying that an

employee must submit requested medical certification [within 15 calendar days] . . .
<u>unless it is not practicable under the particular circumstances to do so despite the</u>
<u>employee's diligent, good faith efforts</u>."  <u>Peter v. Lincoln Technical Institute</u>, 255
F.Supp.2d 417, 441 (E.D. Pa. 2002) (internal citations omitted).  "Good faith requires 'at
least that the employee contact his employer by telephone and make it aware that he is
unable to return his certification before the deadline.'"  <u>Id.</u> (quoting <u>Washington v. Fort</u>
<u>James Operating Co.</u>, 2000 WL 1673134, at *5, (D.Or. Nov.7, 2000).

Allen has alleged that her health care providers, Wendy Brus, MSW, and Susan
Hope, APRN, contacted Metlife so as to complete the FMLA forms during the
appropriate time period for her request for leave between February 2010 and June
2010.  Fifth Am. Compl. ¶ 224.  She also attached to her Fifth Amended Complaint a
facsimile from Susan Hope requesting the necessary FMLA paperwork on April 22,
2010.  Fifth Am. Compl., Ex. 18.  Although not entirely clear, the Fifth Amended
Complaint includes allegations that could state a plausible claim that Allen made a good
faith effort to comply with the requirement that she provide a certification, at least as to
her request for leave between February 2010 and June 2010.[17]  Furthermore, Allen
alleges in her Fifth Amended Complaint that, as for her claim for leave between
September 2009 and November 2009, Verizon set a deadline for her to provide a
certification "which deviated from Family Medical Leave Act laws."  Fifth Am. Compl. ¶
219.  If Verizon denied Allen benefits based on her failure to provide certification within

---

[17] Verizon's citation to <u>Townsend-Taylor v. Ameritech Serv.</u>, 523 F.3d 815 (7th Cir. 2008), is not
on point, as the court considered on a motion for summary judgment whether the plaintiff introduced
evidence to explain or justify his delay in providing a certification.  Here, the court is only considering
whether Allen has alleged facts to plausibly suggest she made a good faith effort to provide the
certification within the required time frame.

a period of time less than the statutorily-required 15 days, such action would interfere with Allen's ability to exercise her statutory rights.  See Ridgeway, 2012 U.S. Dist. LEXIS 41995, at * 18-19 (stating that an employer's failure to provide notice to an employee "which inhibits or restricts an employee from successfully obtaining leave can substantiate a cause of action for interference").  Therefore, Verizon's Motion to Dismiss as to Allen's claim for FMLA interference is denied.[18]

### 2.   FMLA retaliation

Allen alleges that Verizon terminated her in retaliation for seeking and taking FMLA leave.  Fifth Am. Compl. ¶ 243.  FMLA retaliation claims are subject to the McDonnell Douglas burden shifting analysis.  To state a prima facie case of retaliation, the plaintiff must allege that "(1) she exercised her rights under the FMLA, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent."  Milne v. Navigant Consulting, 2010 U.S. Dist. LEXIS 115650, at *34-35 (S.D.N.Y. Oct. 27, 2010).

Verizon argues that Allen has failed to state a claim for FMLA retaliation because she has not alleged any facts to suggest Verizon terminated her because she took prior FMLA leave and that, instead, Allen admits that she was terminated for failing to return

---

[18] In addition, although not alleged within the specific count claiming FMLA interference, Allen alleges elsewhere in the Fifth Amended Complaint that Verizon failed to keep Whitman's FMLA certification confidential, in violation of the FMLA.  Fifth Am. Compl. ¶ 140.  At least one court has interpreted such allegations to be a claim for FMLA interference.  See Mahran v. Benderson Development Co., LLC, 2011 WL 1467368, at *4 (W.D.N.Y. Apr. 18, 2011) (interpreting plaintiff's claim that defendant violated the privacy of the medical information he submitted to secure short-term disability leave as a claim for FMLA interference).  In Mahran, the court recognized that the confidentiality of medical records submitted when one is applying for leave is one of the rights protected under the FMLA.  Id.  Because a claim for FMLA interference is based on an employer's interference, restraint, or denial of an FMLA right, Allen's claim that Verizon failed to protect the FMLA certification as required under the FMLA may, at this stage, be considered a claim for FMLA interference.  Id.

to work.  Verizon's Mem. in Supp. Mot. to Dismiss at 26.  However, as discussed above, see supra, pp. 38-39, Allen has alleged facts to plausibly suggest that Verizon made it difficult for Allen to comply with its policy for informing her supervisor of her absences.  Further, "[t]he fourth element of plaintiff's prima facie case, an inference of discrimination, is established by proximity between plaintiff's exercise of his FMLA leave and the adverse employment action, which immediately followed."  Stevens v. Coach U.S.A., 386 F.Supp.2d 55, 62 (D. Conn. 2005).  Allen alleges that she requested and took FMLA leave on numerous occasions, including from November 15, 2010 through January 14, 2011, Fifth Am. Compl. ¶ 28, and that she was terminated on January 14, 2011, Fifth Am. Compl. ¶ 250.  Therefore, Allen has stated a plausible claim for retaliation.

    L.  ERISA interference and retaliation

Allen alleges two claims against Verizon of ERISA interference and retaliation in Counts 14 and 15.

        1.  ERISA interference

"Section 510 of ERISA prohibits terminations 'for the purpose of interfering with the attainment of any right to which such participant may become entitled under [an employee benefit plan].'"  Hayes v. Compass Group USA, Inc., 343 F.Supp.2d 112, 121 (D. Conn. 2004) (citing 29 U.S.C.A. § 1140).  "Stated differently, a § 510 claim involves three elements: (1) prohibited employer conduct; (2) taken for the purpose of interfering; (3) with the attainment of any right to which the employee may become entitled."  Id. (citing Romero v. SmithKline Beecham, 309 F.3d 113, 119 (3rd Cir.2002)).

Verizon argues that Allen fails to state an ERISA interference claim because the Fifth Amended Complaint fails to include any allegations that Verizon terminated her to avoid paying her STD benefits, as Verizon denied her claim for STD benefits before she was terminated.  Verizon's Mem. in Supp. Mot. to Dismiss at 23, n. 8.  However, Allen alleges that she appealed the denials for her STD and FMLA benefits on January 4, 2011.  Fifth Am. Compl. ¶ 181.  Metlife acknowledged the appeal on January 14, 2011, the same day Allen was fired.  Fifth Am. Compl. ¶ 183.  Therefore, Verizon's Motion to Dismiss is denied as to Allen's claim for ERISA interference.

### 2.  ERISA Retaliation

"ERISA [section] 510 [also] provides that it is illegal to 'discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan.'" Giordano v. Thompson, 564 F.3d 163, 169 (2d Cir. 2009) (citing 29 U.S.C. § 1140).  To allege a prima facie case of ERISA retaliation, Allen must allege that: (1) she was engaged in protected activity; (2) Verizon was aware of that activity; (3) she suffered an adverse employment decision; and (4) there was a causal connection between the protected activity and the adverse employment action.  Id.

Again, as with Allen's claims for disability discrimination and FMLA retaliation, Verizon relies on the fact that Allen admits she was terminated for job abandonment.  Verizon's Mem. in Supp. Mot. to Dismiss at 24.  However, as discussed when analyzing Allen's claims for disability discrimination and FMLA retaliation, Allen has alleged facts to suggest, at least at this stage of litigation, that Verizon interfered with her ability to report her absences, see supra, pp. 38-39.  Further, she has alleged that she engaged

44

in protected activity—filing and appealing her request for STD benefits—in close proximity to her termination.  Perry v. NYSARC, Inc., 424 Fed. Appx. 23, 25 (2d Cir. 2011) (stating that temporal proximity can support an inference of causal connection if the retaliatory action and protected activity were "very close" in time).  This is sufficient to state a claim for relief.  Therefore, the Motion to Dismiss the claim for ERISA retaliation in Count 15 is denied.

     M.  Discrimination in violation of Title II of GINA

     Allen alleges in Count Ten that Verizon violated Title II of the Genetic Information Nondiscrimination Act of 2008 (GINA) by denying her fringe benefits—namely STD—due to her family medical history.  GINA makes it "an unlawful employment practice for an employer to fail or refuse to hire, or to discharge, any employee, or otherwise to discriminate against any employee with respect to the compensation, terms, conditions, or privileges of employment of the employee, because of genetic information with respect to the employee."  42 U.S.C. § 2000ff–1(a)(1).  Genetic information is defined as "information about —(i) such individual's genetic tests, (ii) the genetic tests of family members of such individual, and (iii) the manifestation of a disease or disorder in family members of such individual."  42 U.S.C. § 2000ff.  Therefore, to state a claim for genetic discrimination under GINA, Allen must allege "(1) that she was an employee; (2) who was discharged or deprived of employment opportunities; (3) because of information from Plaintiff's genetic tests."  Leone v. North Jersey Orthopaedic Specialists, P.A., at * 5 (D.N.J. Apr. 27, 2012).

Allen clearly alleges that she was an employee of Verizon and that she was denied STD benefits.[19]  The issue is whether Allen alleges that Verizon considered her genetic information in deciding to deny her request for STD.  Verizon argues, first, that Allen "has not met her burden of establishing that the medical information at issue consists of 'genetic information.'"  Verizon's Mem. in Supp. Mot. to Dismiss at 29.  According to Allen, she has met her burden because "family history is included in the definition of genetic information because it is often used to determine whether someone has an increased risk of getting a disease, disorder, or condition in the future."  Pl. Mem. in Opp. Verizon's Mot. to Dismiss (Doc. No. 106) at 35; see also Poore v. Peterbilt of Bristol, LLC, 852 F.Supp.2d 727, 730 (W.D. Va. 2012).  However, evidence of a family member's disease diagnosis is only considered "genetic information" if used to determine the likelihood of disease in another individual.  It is not considered "genetic information" if it "is taken into account only with respect to the individual in which such disease or disorder occurs and not as genetic information with respect to any other individual."  Poore, 852 F.Supp.2d at 731.

The court finds it hard to imagine how Allen has alleged that Whitman's medical history was used as genetic "family history" when she claims that PDA accidentally reported that Allen herself suffered from Whitman's afflictions.  However, assuming arguendo, that Allen has alleged that Verizon possessed her genetic information, she has failed to allege facts to raise a reasonable inference that Verizon denied her STD

_____

[19] In her Opposition to Verizon's Motion to Dismiss, Allen claims, for the first time, that Verizon discriminated against her because of her genetic information when she was fired on January 14, 2011. See Pl. Mem. in Opp. Verizon's Mot. to Dismiss at 35.  Nowhere in the Fifth Amended Complaint does Allen allege that her GINA claim was based on her termination from Verizon.  Rather, she explicitly states that Verizon discriminated against her by denying her fringe benefits.  Fifth Am. Compl. ¶ 223.  Therefore, the court will not consider this termination claim.

benefits <u>because</u> <u>of</u> this genetic information.[20]   Allen merely states in a conclusory

manner that her STD claim "was denied due to Allen's family medical history."  Fifth Am.

Compl. ¶ 225.  Such conclusory allegations do not meet the standard set forth in

<u>Twombly</u> and <u>Iqbal</u>.  Therefore, Allen's claim for discrimination pursuant to GINA is

dismissed.

## V.   CONCLUSION

For the foregoing reasons:

MLS's Motion to Dismiss (Doc. No. 91) is **DENIED** as to Count 26.  It is

**GRANTED** as to Count Five, Count 20 (with leave to replead), Count 24, and Count 27

(with leave to replead).

PDA's Motion to Dismiss (Doc. No. 92) is **DENIED** as to Count 22.  It is

**GRANTED** as to Count Five, Count Eight, Count 19 (with leave to replead), Count 21

(with leave to replead), Count 23, and Count 25 (with leave to replead).

Metlife's Motion to Dismiss (Doc. No. 98) is **DENIED** as to Count Three

(Whitman's claim only), Count Five (Whitman's claim only), Count Seven (Whitman's

claim only), and Counts 17 and 18.  It is **GRANTED** as to all other claims, with leave to

replead as to Count Seven (Allen's claim).  The Motion to Dismiss does not address,

and this Ruling does not apply to, Count Two.

Verizon's Motion to Dismiss (Doc. No. 93) is **DENIED** as to Count One, Count

Seven (Whitman's claim only), Count Nine (only as to claim for disability discrimination),

---

[20] Verizon also argues that nowhere does Allen allege that Verizon even had access to this genetic information, as it was Metlife who viewed Whitman's FMLA certification, not Verizon.  <u>See</u> Verizon's Mem. in Supp. Mot. to Dismiss at 29.

Count 12, Count 13, Count 14, and Count 15.  It is **GRANTED** as to all other claims, with leave to replead as to Count Three (Whitman's claim only).

Plaintiffs have until **July 7, 2013** to file an Amended Complaint as to only those claims dismissed with leave to replead, upon plausible allegations, supported by bases in fact and law.  <u>See</u> Fed. R. Civ. P. 11.  The court reminds the plaintiffs that, although they need to allege facts to support their claims for relief, they need not provide supporting documentation nor do they need to repeat the same factual allegations in different iterations for each claim.

Further, because the plaintiffs are proceeding <u>pro se</u> and unfamiliar with the rules governing motions practice, the court has given them some leeway to file additional papers related to the various Motions to Dismiss.  Thus, the court **GRANTS** plaintiffs' Motion for Leave to File Sur-reply (Doc. No. 128) and **DENIES** Metlife's Motions to Strike (Doc. Nos. 125, 129).  However, to the extent that Allen and Whitman have included any additional claims in their Sur-replies, as noted throughout this Ruling, such claims are not considered.

**SO ORDERED.**

Dated at New Haven, Connecticut this 6th day of June, 2013

_____/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge